UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re

NICHOLAS JOHN FARLEY,

Debtor.

Chapter 11

Case No.: 25-11017

**DECLARATION OF NICHOLAS JOHN FARLEY PURSUANT
TO RULE 1007-2 OF THE LOCAL BANKRUPTCY RULES
FOR THE SOUTHERN DISTRICT OF NEW YORK**

Pursuant to 28 U.S.C. § 1746, I, NICHOLAS JOHN FARLEY, hereby declare as follows under the penalty of perjury:

1. I filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on May 17, 2025 (the "Petition Date").

2. There is no other or prior bankruptcy case filed by or against me, and there has not been a committee of unsecured creditors organized prior to the order for relief in the Debtor's Chapter 11 case.

3. This Declaration is submitted pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") to provide an overview of my financial situation, the reasons for filing this bankruptcy case, and my proposed exit strategy.

4. I am the owner of 2,800 shares of common stock in 301-52 Townhouse Corp., allocated to Unit 5C at 301 East 52nd Street, New York, NY 10022, along with a proprietary lease for the cooperative apartment. I purchased the Unit in 2013. My financial distress results from a convergence of medical, personal, and other challenges, exacerbated by external obstacles, as detailed below:

5. **Medical Challenges**: Since late 2021, a near-fatal COVID-19 case triggered ongoing

health issues, requiring emergency surgeries: nerve surgery (May 2023), emergency heart intervention (November 2023), left leg surgery (December 2024), and left-hand tendon surgery (March 2025). I am currently under medical treatment for an additional condition and awaiting right-hand tendon surgery. These issues have severely limited my ability to work.

6. **Employment and Income Loss:** From 2018 to January 2024, I served as a lead software engineer at Bank of New York Mellon, with an annual salary ranging from $600,000 to $950,000. Following emergency heart surgery, I returned from medical leave but was terminated in March 2024, with my compensation reduced to $487,000. A settlement in December 2024 omitted my full bonus and included a non-compete clause effective until March 2025, preventing me from meeting my financial obligations. I am currently receiving unemployment benefits of $504.00 per week, underscoring my limited income during this time.

7. **Cooperative Apartment Dispute**: My cooperative apartment, Unit 5C at 301 East 52nd Street, is subject to a secured loan from HSBC Bank USA, N.A. In August 2023, I initiated a loan modification process with HSBC, promptly submitting all required documents. Due to HSBC's internal operational failures and systemic issues, the modification process was disrupted. HSBC has scheduled a public auction of the shares and proprietary lease for May 21, 2025, to address an alleged debt of $2,981,548.85, plus interest and fees, as outlined in the Notice of Sale dated April 28, 2025. Additionally, I am claimed to owe $83,973.27 to 301-52 Townhouse Corp. as of May 1, 2025, a claim I strongly dispute.

8. **Failed Sale Efforts**: In December 2023, I resolved to sell my apartment not only to mitigate financial pressures, but for other reasons that I respectfully request to keep confidential, with details available to the Court under seal if required. On February 1, 2024, I executed an Exclusive Right to Sell Listing Agreement with Serhant LLC, setting a minimum listing price of

$6,495,000. Regrettably, my attempts to sell the property were hindered by external circumstances.

    a. From May to end of July 2024, I was in the United Kingdom caring for my critically ill father, incurring substantial expenses for his medical care, accommodations, transportation and other expenses and nursing home placement alongside my mother, who suffers from advanced dementia.

    b. On June 26, 2024, Siobhan Nolan of Halstead Management Company LLC, the managing agent for 301-52 Townhouse Corp., arbitrarily and without legal basis blocked a scheduled broker's open house for my apartment. This obstruction had no foundation in the co-op's bylaws or house rules, operating agreement or proprietary lease, and constituted sabotaging a critical sale opportunity. This action, part of a pattern of discriminatory and retaliatory treatment directed at me and my wife, forced me to withdraw the apartment from the market. Notably, this obstruction of the sale occurred with the full knowledge of the co-op Board President, Mrs. Kathryne Lyons, and Halstead Management CEO Leslie Wrinkler and Richard Horovitz, President of Brown Harris Stevens, and other senior executives all of whom were copied on all written correspondence documenting the incident and its consequences yet chose to remain silent and took no remedial action, thereby enabling and reinforcing Mrs. Nolan's misconduct.

    c. The co-op board, in concert with property manager, Siobhan Nolan, imposed over $50,000 disputed charges, along with late fees, and additional penalties, based on an alleged Department of Buildings (DOB) violation tied to a preexisting greenhouse structure, that existed prior to my ownership. To date, neither the board nor Ms. Nolan has provided any substantiating documentation, DOB-issue violation, or permit history, not have they afforded me due process to which I am legally entitled under New York housing and shareholder law. These unsubstantiated assessments were levied unilaterally, without transparency, or third-party independent verification, amounting to financial coercion in breach of fiduciary duty.

    d. Mandatory Local Law 11 façade work, commenced on May 5, 2025, on the north and east facing elevations of the building. The work is expected to reach the south-facing line, at which point the apartment's terrace, one of its most valuable features, will become inaccessible for an estimated six months. This prolonged obstruction will further diminish the apartments marketability, depress potential sale value, and severely hinder my ability to relist or show the unit, compounding the financial harm already caused by the prior acts of interference.

9. **Additional Financial Pressures**: My financial obligations include ongoing medical expenses, living costs, and legal fees associated with disputes involving the co-op board and HSBC. These pressures, combined with my inability to generate income due to the non-compete

clause and health issues, necessitated the bankruptcy filing to prevent the imminent loss of my apartment and stabilize my financial and other external situations directly contributing also to the financial part.

10. **Reasons for Filing Bankruptcy**: I filed for Chapter 11 bankruptcy to:

    a. Invoke the automatic stay under 11 U.S.C. § 362 to halt the public auction of my cooperative apartment shares and proprietary lease scheduled for May 21, 2025, preserving my primary asset.

    b. Reorganize my financial obligations, protect my apartment from foreclosure, obtain court authorization to sell the co-op, and allocate the sale proceeds to settle my allowed claims.

    c. Contest the disputed charges levied by the co-op board and pursue legal claims against Halstead Management Company LLC and 301 E 52 Townhouse Corp.

11. **Exit Strategy**: My plan to emerge from bankruptcy is comprehensive and leverages my assets, skills, and restored health to satisfy creditor claims and achieve financial stability. The strategy includes the following components:

    a. **Sale of Cooperative Apartment:** My cooperative apartment, holding substantial equity and listed for at least $6,000,000, has been on the market since February 2025. I plan to request authorization to retain Serhant LLC as my real estate broker and relist the property after the Local Law 11 façade repairs are finished and the terrace is fully accessible, enhancing its marketability. The proceeds from the sale will be allocated to satisfy my allowed claims.

    b. **Media Appearance:** In November 2024, I participated in the filming of an episode of the program "Owning Manhattan," produced by World of Wonder Productions, Inc. This appearance is set to air on Netflix at the end of August or September, providing further exposure to my apartment and allowing me to maximize its equity.

    c. **Pursuit of Employment and Consulting Opportunities**: The non-compete clause expired in March 2025, allowing me to seek employment in the financial and technology sectors. Given my extensive experience as a software engineer and prior earnings of $600,000 to $950,000 annually, I am confident in securing high-income employment or consulting engagements to fund ongoing expenses and contribute to creditor repayments.

d. **Medical Recovery and Productivity**: I am actively pursuing medical treatment to address my ongoing health issues, including the pending right-hand tendon surgery. Restoring my health will enhance my professional productivity and earning potential, supporting my financial recovery.

e. **Proposed Plan of Reorganization**: I intend to remain in control of my affairs as a debtor-in-possession and propose a Chapter 11 plan of reorganization that treats creditors fairly and equitably, consistent with the Bankruptcy Code. The plan will prioritize the sale of the apartment, allocate employment income to living expenses and creditor payments.

12. **Secured Creditors**: I have three secured creditors:

    a. HSBC Bank USA, N.A., holding a security interest in 2,800 shares of 301-52 Townhouse Corp. and the proprietary lease for Unit 5C, with an outstanding balance of $2,981,548.85 as of November 1, 2023, plus interest and costs

    b. 301-52 Townhouse Corp., with a disputed lien totaling $83,973.27 as of May 1, 2025, which encompasses disputed DOB charges.

    c. Wine Credit- holding a security interest in my wine collection with an outstanding of $330,231.54.

13. **No Publicly Held Securities**: I do not own any publicly held shares, debentures, or other securities.

14. **Pending Litigation**: To the best of my knowledge, there are no pending lawsuits against me.

15. **Assets and Liabilities**: In accordance with Local Rule 1007-2(a)(vii), the Debtor's summary of estimated assets and liabilities, which may be subject to changes as my financial circumstances are further refined during the bankruptcy process, will be submitted simultaneously with my schedules.

16. **Reservation of Rights**: I reserve the right to amend this affidavit in accordance with applicable case law, Bankruptcy Code provisions, and Local Rules.

I swear under the penalty of perjury that the foregoing is true and accurate.

Dated: June 15, 2025
       New York, NY

_____
NICHOLAS FARLEY
Debtor

Sworn to before me this
15th day of June 2025

_____
NOTARY
No. 02PO0015563
Qualified in New York County
Commission Expires 3/2-27

JULIO E. PORTILLA
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02PO0015563
Qualified in New York County
Commission Expires Nov. 3 2027