IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| NICHOLAS JOHN FARLEY, | : | Case No. 25-11017 (MEW) |
| Debtor. | : | |

**WINECREDIT LLC'S OBJECTION TO THE DEBTOR'S THIRD AMENDED COMBINED CHAPTER 11 PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT**

WineCredit LLC ("WineCredit"), by and through its undersigned counsel files this objection to the Debtor's most recent *Third Amended Combined Chapter 11 Plan of Reorganization and Disclosure Statement Dated August 4, 2026* (the "Plan") [Docket No. 136] as follows:

1. WineCredit is a secured creditor of this Debtor. On September 22, 2025, WineCredit filed Proof of Claim No. 10 in the secured claim amount of $303,602.13 plus continuing interest, expenses and costs relating to preservation and storage of the Collateral[1], including storage, legal fees and expenses. This case has been ongoing for almost 16 months, and only sporadic and *de minimis* payments have been made against some post-petition accrued expenses. Since the filing of the Proof of Claim, WineCredit has incurred additional interest, expenses, and costs which currently updates WineCredit's total secured claim to $457,474.86, exclusive of legal fees and expenses for the month of August.

2. As this Court is aware, WineCredit has been seeking relief from the stay to liquidate its Collateral for over a year, which has been opposed by the Debtor at every turn.

[1] Collateral as detailed in that certain Revolving Loan and Security Agreement dated July 1, 2021 (the "Loan Agreement"), as supplemented and/or modified from time to time thereafter.

Meanwhile the Debtor's case dragged along to the detriment of all creditors, while fanciful assertions were made to the parties and this Court including, *inter alia*, the ability to realize hundreds of thousands of dollars in value for HiFi equipment (necessitating a court fight with an unpaid storage company to preserve the original boxes), the sale of a grand piano, and an alleged offer from a private buyer for an amount well in excess of all estimated values for the wine collateral that never materialized. As a result of the dispute and delays in the liquidation of its Collateral, WineCredit has gone from an oversecured position to a badly undersecured position.

3. The Debtor has filed a revised Plan that is now scheduled for confirmation that will enable the Debtor to retain ownership of his luxury apartment in New York City, and retain other assets (e.g. art work, among other things).[2] However, the ability to do so hinges on repayment of creditors in full so that they are unimpaired. Otherwise the Debtor is not entitled to retain assets above the proscribed exemptions, much less valuable assets, or avoid a full and complete disclosure and evaluation of all assets.

4. As drafted, the Plan is not confirmable on its face, and does not provide adequate information as to how the Debtor intends to satisfy his obligations which he fails to even acknowledge, much less address. The Plan categorizes WineCredit as a Class 3 – Secured Claim that "consists of an Allowed Secured Claim of WineCredit LLC, secured by the Debtor's wine collection." The Plan does not define WineCredit's allowed secured claim. *See* Article IV of the Plan. The Plan further provides that "[t]o the extent the Allowed Secured Claim of WineCredit LLC exceeds the value of its collateral, the deficiency shall be treated as a Class 5 General Unsecured Claim." Section 6.3 of the Plan. WineCredit is currently in the process of liquidating

[2] Upon information and belief, there has never a full accounting of the Debtor's other assets as, for example the HiFi equipment and the Piano had not been disclosed and/or valued before they were raised in Court, and the Debtor has referenced the sale of artwork that WineCredit and, upon information and belief, others were not aware of.

the Collateral and has not received any proceeds to date.[3] As discussed in more details below, the Plan's disclosures are wholly inadequate.

5. The Plan necessarily provides a 100% distribution with 4% interest to allowed general unsecured claims aggregating $243,285.63 (the "Class 5 GUC Claims"). *See* Section 6.5 of the Plan. However, the Class 5 GUC Claims does not specifically include WineCredit as its deficiency claim is unknown at this time. The Plan fails to acknowledge that based upon data filed with and submitted to this Court, WineCredit has a substantial and growing deficiency claim, created and exacerbated by the Debtor's conduct throughout this case. While the Debtor has reserved his right to object to WineCredit's claim, he has not done so, and thus WineCredit has an allowed claim. But even if the Debtor were to object, at a minimum it must reserve for that substantial and growing deficiency claim and demonstrate an ability to pay it along with all other creditors' claims (plus the interest thereon) in accordance with the terms of the Plan. Assuming a value of $350,000 for the Collateral (as asserted in WineCredit's motion for stay relief), WineCredit would have a deficiency claim as of today of approximately $107,000 and growing – nearly 44% of the stated Class 5 GUC Claims.[4] It is unaccounted for and the Debtor has provided no evidence of ability to pay or reserve for it. As such, the Debtor's projected 100% distribution on the general unsecured claims pool is not tenable and the plan is unconfirmable. Further, WineCredit submits it is an impaired creditor (along with creditors) and should have been entitled to vote to reject the Plan.

6. The Debtor's Plan is not feasible pursuant to Section 1129(a)(11) of the Bankruptcy Code. Section 1129(a)(11) of the Bankruptcy Code requires that: "Confirmation of

---

[3] The sale of the Collateral is being conducted in accordance with Court's entry of the *Order Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. §362(d)* dated August 5, 2026 [Docket No. 133].

[4] Of course WineCredit is pressing for the best possible outcome from the sale of the Collateral, and if the sale ultimately yields more value, the deficiency claim will be lower.

the plan is not likely to be followed by liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." The feasibility inquiry is fact-specific and requires consideration of a number of factors and the burden is on the Debtor to not just show the possibility of success, but the reasonable likelihood of success to meet the feasibility requirement. To demonstrate its ability to reorganize, the debtor must establish that it has a feasible plan based upon concrete and reliable data. *See In re Young Broad,* 430 B.R. 99, 129 (Bankr. S.D.N.Y. 2019) (future projections are indicative of feasibility of a proposed plan, such projections must not be speculative, conjectural, or unrealistic). The Debtor has to provide specific proof of its ability to meet its repayment obligations, including making plan payments. *See In re DBSD N. Am., Inc*., 634 F.3d 79 (2d Cir. 2010).

7. Putting the failure to provide for WineCredit's deficiency claim aside for the moment, as part of the Debtor's reorganization, he intends to maintain his luxury apartment, which carries a monthly mortgage of $15,066 plus $6,533 in Co-op expenses for a total of $21,599. The Debtor's projected monthly wages and social security income total $21,129. The Debtor includes other line items in the Plan Budget for additional sources of income to help fund the Plan and pay its creditors. However, all of these additional sources of income are either short-term or theoretical. The Debtor's regular income does not even cover his basic housing expense.

8. Further, the Debtor's projected net income over the 35-month period is approximately $2,035,085, which includes income sources that are not concrete and unreliable. For example, $325,000 of the net income are from spousal contributions and another $143,430 from the sale proceeds of the HiFi equipment and a piano. *See* Article 7.1 of the Plan. Based

upon information and belief, no sale for these assets have occurred. In the earlier version of the Plan, after indicating earlier in this case that the HiFi equipment was worth hundreds of thousands of dollars, the Debtor stated that the HiFi equipment had no market value after repeated efforts. *See First Amended Combined Chapter 11 Plan of Reorganization and Disclosure Statement Dated June 19, 2026*, Section 1.5 [Docket No. 121]. Additionally, the source of the spousal contributions are unclear as it has been represented in Court that his spouse is not working but would begin to look for a job. Based on the Debtor's monthly operating reports, it appears the Debtor has been paying for most, if not all of the Debtor's and his spouse's household expenses. There has been no indication that the Debtor's spouse has contributed anything to the household or has the means to. These potential sources of funds to implement the Plan are at best speculative.

9. Indeed, further review of the 15 months of monthly operating reports that have been filed, the Debtor has reported disbursements totaling at least $72,510.58 made directly to his spouse in either Venmo/cash payments (approximately $34,800) or payments on his spouse's behalf (approximately $37,710.58), payments for her transportation and personal costs and a $25,000 retainer[5] for her legal counsel, all in addition to general household expenses. Interestingly enough, in first 6 months of the Debtor's bankruptcy case, there appears to be no reported disbursements made to his spouse or on the spouse's behalf. The disbursements totaling $72,510.58 were only been reported in the last 9 monthly operating reports filed. Also, it has to come to WineCredit's attention that the Debtor's spouse is a defendant in a lawsuit where the plaintiff alleges conversion, trespass to chattels, and replevin for personal property including luxury watches and rare bottles of wine collectively worth more than $1 million. *See* Complaint

[5] According to the June and July 2026 monthly operating reports, the Debtor indicates the spouse's legal counsel refunded $25,000 to the estate.

in *Wais Jalali v. Zumela Arroyo Pagan* [Docket No. 1, Civil Case No. 26-CV-04578) (S.D.N.Y.)]. Given the foregoing, it is patently implausible that spousal contributions of $325,000 will actually be made to fund the Plan, aside from the additional fact that the Plan failures to provide for the payment of WineCredit's unsecured deficiency claims As such, the Plan is not feasible.

10. Lastly, the Debtor's Budget underestimates his expenses in the 35-month period and are inconsistent with his monthly operating reports. For example, the Plan Budget allocates a total of $2,900 monthly for food, household essential, and personal care (including clothing). However, after reviewing all of the Debtor's monthly operating reports, these expenses have range from approximately $3,300 to $6,200 per month. These projected estimates are not reliable and the Debtor has not provided specific proof to support his budget or of his ability to make plan payments.

11. While the Plan proposes a 100% distribution with 4% interest to general unsecured creditors, there is a significant likelihood that there will be a default under the Plan. Yet there is no mechanism for the enforcement of the plan payments and terms. As discussed above, the Debtor's Plan Budget contains unrealistic data to support the feasibility of the Plan. The Plan states an unsupported conclusion of what will happen, ignores known liabilities, all in the effort to create an illusion that there is a reasonable likelihood of successful reorganization while ignoring the fact that the Debtor's actual expenses are far greater than the income he has generated in the last 16 months of this case. It is clear that the Debtor's expenditures will vastly exceed his projected expenditures stated in the Plan Budget. If and when the default comes, creditors will be right back where they started 16 months ago, with the Debtor dragging them out, and no supervision of or ability to enforce the contractual obligations of the Plan. Given

these facts, and this Debtor's track record in the case, if the Court were to consider approving the Plan – and WineCredit submits it should not -- creditors should not be left without an appropriate default/enforcement mechanism for it to be actually implemented. After 16 month in this case, creditors should not be left to relive their prior experience here - no payments, no means to address that, all while the Debtor continues to live in a luxury apartment and retain his assets.

12. Finally, WineCredit is troubled that with confirmation approaching, the Debtor's current counsel advised of her intent to withdraw from the case, and that papers would be filed in that regard. At best this will created further delays on a fatally flawed and infeasible Plan, buying the Debtor more time to drag this process out further. This case cries out for more formal oversight.

WHEREFORE, WineCredit respectfully requests that the Court deny confirmation of the Debtor's Plan, and grant such other, further and additional relief as the Court deems just and proper.

Dated: September 11, 2026
New York, New York

HALPERIN BATTAGLIA BENZIJA LLP

By: *_/s/ Alan D. Halperin_*
Alan D. Halperin, Esq.
Ligee Gu, Esq.
40 Wall Street, 37th Floor
New York, New York 10005
Tel: 212-765-9100
ahalperin@halperinlaw.net
lgu@halperinlaw.net

*Counsel to WineCredit LLC*